J. SCOTT SOUDERS, ESQ., State Bar # 069425
J. SCOTT SOUDERS, P.C.
13 Corporate Plaza, Suite 200
Newport Beach, CA 92660
Telephone:(949) 718-3574
Facsimile: (949) 718-3582
Email: scott@scottsouders.com

Attorney for Plaintiff
MFour Mobile Research, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| MFOUR MOBILE RESEARCH, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BLAKE A. WATCHER; ROBERT SULLIVAN; and ICREATIVECANVAS LLC, a California limited liability company; and Does 1-10,<br><br>Defendants. | CASE: 8:16-cv-01893<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS THE LANHAM ACT [15 U.S.C. § 1125 (a) and (d); COMMON LAW UNFAIR BUSINESS PRACTICES; LIBEL PER SE; AND RESCISSION OF UNLAWFUL CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff MFOUR MOBILE SERVICES, INC. ["plaintiff"] in its Complaint as against defendants BLAKE A. WATCHER, ROBERT SULLIVAN, and ICREATIVECANVAS LLC, for injunctive and monetary relief complains and alleges as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the state law claims for

common law unfair competition, libel per se and rescission of unlawful contract pursuant to 28 U.S.C. § 1367.

**VENUE**

2. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)-(c) because all defendants reside in the State of California and defendant ICREATIVECANVAS LLC maintains its principal place of business in Orange County, and plaintiff is informed and believes and thereon alleges that defendants BLAKE A. WATCHER and ROBERT SULLIVAN also reside in Orange County, which is located in the Central District of California.

**PRELIMINARY STATEMENT**

3. This action involves corporate cyberharassment by a disgruntled, defunct limited liability company who enters into contracts, does not fulfill them and when the contract is terminated for cause, threatens and extorts - and then performs a campaign of cyberharassment, including copying of corporate name, image, marks, and websites mimicking its victim's business so as to lure plaintiff's current and potential clients to a fake website containing fabricated complaints by non-existent persons created in fiction to mislead the public as to the commercial reputation of its victim and its services.

4. Defendants herein are so bold to state their intention to create false complaints and blogs and websites if they are not paid what they want, even if they failed to provide the services they promised. Defendants are so bold as to admit in writing their stated intent to destroy its former client if the former client, plaintiff in this instance, does not "pay up" defendants' specious demand. Defendants are so bold that they publicly, in print, defame the integrity of their victim - plaintiff in this instance - as to its business integrity, all the while not paying their own taxes and representing itself as a reputable business when all the while it is a suspended entity, unable to do business legally in the State of California, because it refuses to pay its own taxes.

5. This action arises out of a one-time business agreement entered into between plaintiff and defendant ICREATIVECANVAS by and through its principal BLAKE A. WATCHER and its employee/agent ROBERT SULLIVAN [collectively "defendants unless

individually referred to herein]. Unbeknownst to plaintiff, defendants were unlawfully engaging in business on behalf of ICREATIVECANVAS LLC, a defunct and suspended California limited liability company which had no lawful right to do business or to contract in the State of California.

6. Moreover, when ICREATIVECANVAS LLC failed to timely provide the services promised and its services were timely and lawfully terminated for cause, defendants made repeated threats in writing to plaintiff that if plaintiff did not pay them off as to the money they were demanding, that defendants would create false complaints, false blogs and false websites to "ruin" plaintiff's business. When plaintiff refused to give in to defendants extortion demands, defendants created a false and fraudulent website mimicking and using plaintiff's logo, its slogan "Mobile Insights in Real Time" and the entire look and appearance of plaintiff's own website - only to change the words to both infer and directly state that plaintiff engages in unfair and unlawful business practices, is not a trustworthy or honest business, and directly and falsely alleged that plaintiff cheated "Brian Walker" out of his money in a business deal. However, there is no such person as "Brian Walker" who is a mere pseudonym of defendant BLAKE A. WATCHER who with the other defendants created the fake website known as "www.mfoursucks.com" and defendants knew at the time of creating this fraudulent website that there was no such contract or agreement or business dealings of any kind ever between plaintiff and "Brian Walker" as represented on their false "MFour" website.

7. Defendants, and each of them, have represented in writing to plaintiff that unless plaintiff pays defendants the money they are demanding on behalf of the suspended entity, defendant iCreativecanvas LLC, that defendants will continue their efforts, post additional false complaints on the internet about plaintiff - all for the express purpose of damaging plaintiff's business name and goodwill.

8. By this action, plaintiff seeks to permanently enjoin defendants from using plaintiff's name, logo or slogan on any advertisements, websites or any other written or electronic material; making any false or misleading representations of fact that is likely to deceive or cause confusion as to defendants' and their websites affiliation with plaintiff; making

any false statements of fact as against plaintiff' business, integrity or honesty.

9. Plaintiff further seeks monetary damages against defendants, and each of them for general, special and punitive damages according to proof at trial, as a result of defendants' purposeful and malicious libel per se of plaintiff's business on their website "www.mfoursucks.com".

10. Plaintiff further seeks a judgment of rescission as to the unlawful contract defendants lured plaintiff into signing, representing that defendant iCreativecanvas LLC was a legitimate business authorized to do business in the State of California, which defendants knew at the time the contract was entered into it was not.

**THE PARTIES**

11. Plaintiff is, and since January 3, 2006, has been a California corporation in good standing doing business in the State of California. Plaintiff is the leader in mobile market research. The biggest research firms and Fortune 500 brands across the globe trust plaintiff to deliver quality and actionable insights provided by plaintiff's Surveys On The Go® app, which features the largest all-mobile panel with the most reviews and highest app store ratings.

12. Since its inception and to the present, plaintiff has used the name MFOUR MOBILE RESEARCH, INC., and MFour Mobile Research, as well as the slogan associated therewith, "mobile insights in real time" as its brand. In addition, plaintiff has used a particular symbol associated with its name. Attached hereto as Exhibit "A" is a true and correct copy of a screen shot of plaintiff's website containing plaintiff's registered corporate name, its slogan, and its distinctive mark. Plaintiff has expended substantial sums in developing, designing and creating its website, and creating a market under its corporate name, distinctive website, slogan and mark.

13. Defendant ICREATIVECANVAS LLC is a suspended California limited liability company whose rights to operate, contract and appear, prosecute and defend itself in a Court of law in this State has been revoked for ICREATIVECANVAS LLC's failure to pay its business taxes. Attached hereto as Exhibit "B" is a true and correct copy of the California Secretary of State's website disclosure confirming that ICREATIVECANVAS LLC's registration to do

business in the State of California is suspended, and that such suspension is in regard to their failure to pay the Franchise Tax Board the outstanding tax debt this defendant owes.

14. Plaintiff is informed and believes and thereon alleges that defendant BLAKE A. WATCHER ["WATCHER"] is, or was, the managing member of ICREATIVECANVAS LLC, and at all times stated knew that ICREATIVECANVAS LLC was a suspended limited liability company whose rights to operate in the State of California were revoked pending the payment of past due taxes to the State of California.

15. Plaintiff is informed and believes and thereon alleges that defendant ROBERT SULLIVAN ["SULLIVAN'] is a member and/or agent of defendants ICREATIVECANVAS LLC and WATCHER, and at all times stated herein was acting within the course and scope of such agency/authority these other defendants.

16. John Doe defendants 1 through 10, inclusive, are presently unknown persons or entities working for, in conjunction with, or otherwise under the control and direction of the named defendants herein.

17. On or about September 22, 2016, plaintiff, in good faith and without knowledge that defendant ICREATIVECANVAS LLC's rights to do business in California had been suspended, signed a written contract with ICREATIVECANVAS LLC. However, plaintiff has never been provided with a copy of the Agreement signed by ICREATIVECANVAS LLC. true and correct copy of this Agreement as signed by plaintiff is attached hereto as Exhibit "C" [the "Agreement'].

18. As set forth in the Agreement, plaintiff's needs were highly time sensitive and were a material term of the Agreement such that if the time-line stated could not be met, the Agreement had no value to plaintiff. Upon plaintiff becoming aware that defendant ICREATIVECANVAS LLC could not meet the mandatory deadline for completion of the project set forth in the Agreement, on or about October 4, 2016, plaintiff terminated the Agreement in writing.

19. In response to being terminated for cause, first SULLIVAN and then WATCHER, both acting purportedly on behalf of ICREATIVECANVAS LLC, began an email writing

campaign, the purpose of which was to intimidate plaintiff into paying for services it did not receive to avoid threatened defamation of plaintiff "throughout the web" by defendants. For example, defendants made the following threats to plaintiffs should plaintiff not "honor" the contract which ICREATIVECANVAS LLC entered into illegally and without authority as a suspended legal entity:

- I will make sure to optimize a blog to tell your future clients that you stiff your vendors too. I think I will optimize it with Donald trump [sic] threads that are trending. He likes not paying vendors too. I hope you look forward to that too. Fun fact: our website dominates search engines and we are competing with people that do it for a living. We have 3 clients in your building that will find out first. Email by Robert Sullivan, October 4, 2016;

20. Within hours of this threat, defendants created a website entitled "www.mfoursucks.com" in which defendants mimicked exactly plaintiff's website - using plaintiff's corporate name, slogan, marks, format and design - but instead of setting forth the true information as to the company and its products, defendants altered the information, including but not limited to:

a. Where the real website says "Why MFour" and explains the experience, skill and abilities of plaintiff, defendants created the identical caption "Why MFour" and then engaged in defamatory statements such as "That's the point! . . . whether or not MFour is worth dealing with by the horrible businesses [sic] practices that we've witnessed first hand". These representations were knowingly false when made by defendants.

b. Where the real website says "Who We Are" and explains that plaintiff is "the creators of Surveys On The Go®, the number one native survey app that provides consumer insights never before thought possible. . ." defendants' false website recreates the "Who We Are" caption exactly - but then states: ". . . We are simply here to show all businesses how

corrupt MFour Mobile Research really is . . ." and then promises an opportunity on October 8, 2016 for the public to "upload complaints" to the website for this "proof". No such uploading opportunity was ever intended or created, and no "complaints" have been made by anyone - including specifically no complaints ever about plaintiff being corrupt or dishonest in its business dealings in any way. These representations were knowingly false when made by defendants.

21. Moreover, this website created by defendants identifies a false complaint by WATCHER's pseudonym "Brian Walker" wherein WATCHER misrepresented that "Brian Walker" entered into a contract with plaintiff and that plaintiff did not pay for the services contracted for. However, plaintiff never entered into any such contract, and never owed any such money to anyone named Brian Walker or the entity "Hubanspoke Creative". In fact, there is no such entity as Hubanspoke Creative registered to do business in California and even this company name is a figment of defendants' imagination created to perpetrate this fraud upon plaintiff and the general public as to plaintiff's integrity and business reputation.

22. Prior to filing this Complaint, plaintiff demanded in writing to defendants that defendants remove the fraudulent website, and to cease and desist in posting false statements on the internet as to plaintiff's lack of integrity, honesty, and good reputation. However, rather than cease their corporate cyberharassment to extort money from plaintiff - defendants promised to continue in their efforts and to malign plaintiff's business reputation in multiple blogs and websites in retaliation for plaintiff asserting its right to cancel the Agreement which defendants had no right to enter into as suspended entity, and which defendants thereafter breached.

**FIRST CAUSE OF ACTION**

**(Violation of Section 43(a) of the Lanham Act [15 U.S.C. § 1125 (a) and (d)]**

**As Against All Defendants Including Does 1 through 10)**

23. Plaintiff incorporates paragraphs 1 through 22 as though set forth hereat.

24. Plaintiff has a viable, recognized commercial name and reputation and has made substantial investment in its commercial name and reputation and the development of its website

to promote its strong commercial reputation and valuable services.

25. Plaintiff is informed and believes that Defendants willfully, knowingly and intentionally used Plaintiff's name, mark and slogan in interstate commerce without its consent or authorization.

26. Defendants created a false website, mimicking exactly plaintiff's website for the purpose of making false and misleading statements of fact in commerce about the nature and quality of plaintiff's services, using plaintiff's corporate name, logo and slogan, and exact website design, for the purpose and with the intent of causing damage to plaintiff's name and reputation, and injuring plaintiff's ability to do business and to mislead the public as to the value and desirability of plaintiff's services.

27. Defendants further created false "complaints" of a phantom person and entity for the purpose of libeling plaintiff as to its integrity and honesty in business dealings, which defendants knew was a false statement of fact, but which they made maliciously for the purpose of harming plaintiff's commercial reputation.

28. As a direct and proximate result of defendants' knowing and purposeful misrepresentation of facts in the stream of commerce as to plaintiff's commercial reputation and value of its services, plaintiff has suffered damage to its commercial reputation, which damages will be ongoing and continue so long as defendants' fraudulent website and false statements of fact are being released to the public via the internet.

29. Plaintiffs remedies at law cannot adequately compensate it for the ongoing injuries threatened by defendants' continuing conduct. Unless defendants are restrained and enjoined, defendants will continue to commit unlawful acts, causing plaintiff to suffer further irreparable injury to its commercial reputation. .

30. Plaintiff seeks a preliminary and permanent injunction prohibiting defendants from creating and/or maintaining any website, advertisement, blog or other printing introduced into commerce in which it (1) gives a false or misleading representation of affiliation with plaintiff and/or use of its corporate name, logo, slogan or design; (2) makes any false or misleading representation or advertisement as to the reputation and/or goodwill of plaintiff's

business, including but not limited to the creation of false "complaints" or claims or false websites or blogs containing reference to such false claims as against plaintiff.

31. As defendants' acts were malicious and wilful, plaintiff seeks recovery of its attorney fees as well as treble damages pursuant to 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**

**(Common Law Unfair Business Practices As Against All Defendants Including Does 1 through 10)**

32. Plaintiff incorporates paragraphs 1 through 31 as though set forth hereat.

33. Plaintiff has a viable, recognized commercial name and reputation and has made substantial investment in its commercial name and reputation and the development of its website to promote its strong commercial reputation and valuable services.

34. Plaintiff is informed and believes that Defendants willfully, knowingly and intentionally used Plaintiff's name, mark and slogan in interstate commerce without its consent or authorization.

35. Defendants created a false website, mimicking exactly plaintiff's website for the purpose of making false and misleading statements of fact in commerce about the nature and quality of plaintiff's services, using plaintiff's corporate name, logo and slogan, and exact website design, for the purpose and with the intent of causing damage to plaintiff's name and reputation, and injuring plaintiff's ability to do business and to mislead the public as to the value and desirability of plaintiff's services.

36. Defendants further created false "complaints" of a phantom person and entity for the purpose of libeling plaintiff as to its integrity and honesty in business dealings, which defendants knew was a false statement of fact, but which they made maliciously for the purpose of harming plaintiff's commercial reputation.

37. As a direct and proximate result of defendants' knowing and purposeful misrepresentation of facts in the stream of commerce as to plaintiff's commercial reputation and value of its services, plaintiff has suffered damage to its commercial reputation, which damages will be ongoing and continue so long as defendants' fraudulent website and false statements of

fact are being released to the public via the internet.

38. Plaintiffs remedies at law cannot adequately compensate it for the ongoing injuries threatened by defendants' continuing conduct. Unless defendants are restrained and enjoined, defendants will continue to commit unlawful acts, causing plaintiff to suffer further irreparable injury to its commercial reputation. .

39. Plaintiff seeks a preliminary and permanent injunction prohibiting defendants from creating and/or maintaining any website, advertisement, blog or other printing introduced into commerce in which it (1) gives a false or misleading representation of affiliation with plaintiff and/or use of its corporate name, logo, slogan or design; (2) makes any false or misleading representation or advertisement as to the reputation and/or goodwill of plaintiff's business, including but not limited to the creation of false "complaints" or claims or false websites or blogs containing reference to such false claims as against plaintiff.

40. Defendants have acted with fraud, malice and oppression, warranting recovery for plaintiff and against defendants, and each of them, of punitive damages the amount of which to be determined at trial.

**<u>THIRD CAUSE OF ACTION</u>**

**(Libel Per Se As Against All Defendants Including Does 1 through 10)**

41. Plaintiff incorporates paragraphs 1 through 40 as though set forth hereat.

42. Plaintiff has a viable, recognized commercial name and reputation and has made substantial investment in its commercial name and reputation and the development of its website to promote its strong commercial reputation and valuable services.

43. Plaintiff is informed and believes that defendants created a false website, mimicking exactly plaintiff's website for the purpose of making false and misleading statements of fact in commerce about the nature and quality of plaintiff's services, using plaintiff's corporate name, logo and slogan, and exact website design, for the purpose and with the intent of causing damage to plaintiff's name and reputation, and injuring plaintiff's ability to do business and to mislead the public as to the value and desirability of plaintiff's services.

44. Defendants further created false "complaints" of a phantom person and entity for

the purpose of libeling plaintiff as to its integrity and honesty in business dealings, which defendants knew was a false statement of fact, but which they made maliciously for the purpose of harming plaintiff's commercial reputation.

45. Defendants' false statements of fact are libel on their face, and are libelous per se, as they directly accuse and impute dishonesty, bad faith business practices and a lack of commercial integrity upon plaintiff in it's business affairs.

46. As a direct and proximate result of defendants' knowing and purposeful misrepresentation of facts in the stream of commerce as to plaintiff's commercial reputation and value of its services, plaintiff has suffered general damage to its commercial reputation, which damages will be ongoing and continue so long as defendants' fraudulent website and false statements of fact are being released to the public via the internet.

47. The above-described conduct of defendants were done with malice, oppression and fraud in that they were knowingly false when made and were made for the purpose of placing plaintiff in a false light as to its business reputation so as to cause harm to plaintiff's business reputation and goodwill, and thus an award of punitive damages is justified.

**FOURTH CAUSE OF ACTION**

**(Rescission of Void/Voidable Unlawful Contract [Rev. & Tax Code § 23304] As Against ICREATIVECANVAS LLC and Does 1 to 5)**

48. Plaintiff incorporates paragraphs 1 through 47 as though set forth hereat.

49. On or about September 22, 2016, plaintiff, in good faith and without knowledge that defendant ICREATIVECANVAS LLC's rights to do business in California had been suspended, signed a written contract with ICREATIVECANVAS LLC. However, plaintiff has never been provided with a copy of the Agreement signed by ICREATIVECANVAS LLC. true and correct copy of this Agreement as signed by plaintiff is attached hereto as Exhibit "C" [the "Agreement']. At the time plaintiff entered into the Agreement with defendant ICREATIVECANVAS LLC, plaintiff was informed and led to believe that ICREATIVECANVAS LLC was a viable legal California business entity entitled to conduct the business which formed the basis of the Agreement under California law.

50. However, plaintiff is informed and believes and alleges that at the time the Agreement was entered into and at all times during the term of the Agreement, ICREATIVECANVAS LLC's rights to conduct business in California was suspended by the California Secretary of State pursuant to California Revenue and Taxation Code § 23301, for ICREATIVECANVAS LLC's failure to pay its overdue tax obligations owed to the California Franchise Tax Board.

51. Pursuant to California *Revenue and Taxation Code* § 23304, the Agreement is therefore voidable at the request of plaintiff as a matter of law, and by this Complaint plaintiff seeks a judgment that the Agreement is void.

## DEMAND FOR JURY TRIAL

52. Plaintiff hereby demands trial by jury.

**WHEREFORE**, plaintiff prays:

1. For a preliminary and permanent injunction prohibiting defendants, or anyone acting on their behalf or for their benefit from creating and/or maintaining any website, advertisement, blog or other printing introduced into commerce in which it (1) gives a false or misleading representation of affiliation with plaintiff and/or use of its corporate name, logo or slogan; (2) makes any false or misleading representation or advertisement as to the reputation and/or goodwill of plaintiff's business, including but not limited to the creation of false "complaints" or claims or false websites or blogs containing reference to such false claims as against plaintiff;
2. For general damages according to proof, but not less than $50,000.00;
3. For treble damages pursuant to 15 U.S.C. § 1117;
4. For an award of attorney fees in favor of plaintiff pursuant to 15 U.S.C. § 1117;
5. For punitive damages according to proof at trial;
6. For costs of suit herein incurred; and

/ / /

/ / /

7. For such other and further relief as the Court may deem just and reasonable.

Respectfully submitted,

DATED: October 14 2016

J. SCOTT SOUDERS, P.C.

J. Scott Souders, Esq.
Attorney for Plaintiff
MFour Mobile Research, Inc.

**DEMAND FOR JURY TRIAL**

Plaintiff MFOUR MOBILE RESEARCH, INC., hereby demands a jury trial on all issues before the Court.

Respectfully submitted,

DATED: October 14 2016

J. SCOTT SOUDERS, P.C.

J. Scott Souders, Esq.
Attorney for Plaintiff
MFour Mobile Research, Inc.

Exhibit "A"


Mail - Jessica @ J. Sc
scottsouders@sbcg
Imported From Firef
Administrator Login
My Account at the W
ADP RUN
JuriSearch Home
Anthem Billing Portal
mfour
mobile insights in real time
HOME
WHY NOT TO CHOOSE US
CURRENT BAD REVIEWS
TO COMPLAINTS
Welcome to the MFOUR Complaint Website
Let's hear your story on how you got screwed by this company.
File a Complaint

## Who We Are

Welcome to the MFour Complaint Website. We are here to simply show all businesses how corrupt MFour Mobile Research really is. We will be hosting a message board where you can upload your complaints and share your stories October 6th.

## What We Do

We are here to simply to take a stand against businesses that screw over other small businesses. And we want your story! We aren't here to create slander but simply tell the true stories that you have experienced with MFOUR Mobile.

## Why MFour?

That's the point! This is the website where y decide for yourself whether or not MFour is worth dealing with by the horrible businesse practices that we've witnessed first hand.

## What Other People Are Saying

These guys are horrific. I worked with this company and still have $2,521.00 unpaid for contract worked completed. If you do work with them, get cash! Otherwise, good luck!

Brian Walters |

Exhibit "B"

# Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, October 07, 2016. Please refer to Processing Times for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | ICREATIVECANVAS LLC |
| Entity Number: | 200907510374 |
| Date Filed: | 03/04/2009 |
| Status: | SOS/FTB SUSPENDED |
| Jurisdiction: | CALIFORNIA |
| Entity Address: | 2192 MARTIN STE 255 |
| Entity City, State, Zip: | IRVINE CA 92612 |
| Agent for Service of Process: | BLAKE A WATCHER |
| Agent Address: | 373 SAN LEON |
| Agent City, State, Zip: | IRVINE CA 92606 |

* Indicates the information is not contained in the California Secretary of State's database.

* **Note:** If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report.

- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Privacy Statement | Free Document Readers

Copyright © 2016 California Secretary of State

# Exhibit "C"

iCreativeCanvas

Client MFour Mobile Research

Date September 22, 2016

iCreativeCanvas

## Our Company

iCreativeCanvas is an award winning, marketing design firm based in Irvine, CA of Orange County. Featuring an integrated staff of web consultants, creative designers, copywriters, programmers and marketing professionals, we've built a reputation for creating a positive return on our client's investments. iCreativeCanvas began with the intention of creating a full-service marketing firm that offered excellent service, creativity and production at an inexpensive rate. iCreativeCanvas quickly became a top marketing firm in Orange County. To date, iCreativeCanvas offers custom web design, search engine optimization, graphic design, marketing consulting, ecommerce solutions, and much more!

## Our Solutions

Our solutions are custom-fit to our client's unique business needs, and have a measurable impact on business performances as a whole. We offer all inclusive web site development, including design, hosting and support. We provide consulting on internet marketing strategy, helping you identify competitive advantages the internet can deliver for your business. We implement high-quality multimedia design to effectively brand your company and secure a strong marketplace position.

Our management team has an average of 10 years direct experience in creative marketing, including both strategy and implementation. We are able to understand the business needs of our clients and in turn, help our clients understand how we can meet their business needs. iCreativeCanvas presents all technology options, and works with our clients to determine the best fit, both functionally and financially.

## Our Vision

We believe that technology is only as valuable as the solution it provides. Our first goal on any project is to understand the business issues surrounding it, then, we choose the technology that best meets the needs of our client. We have set a directive within our organization that requires all of our solutions to have a tangible, measurable result. Ultimately, this is an increase in sales or a decrease in costs. However, the tactical goal may be to develop a stronger web presence or streamline processes.

We emphasize the value of integrity. We honestly evaluate a client's solution, and if it does not fit within our core competencies, we feel that it is our duty as a trusted business advisor to direct our clients to organizations, often a partner, to assist with the solution.



Initial by iCreativeCanvas: ________
Initial by Client: ________

## Scope of Work

## Layout & Design

Whether you sell consumables or a service, your company requires a presence that allows people to actively obtain information quickly, clearly and yet set you apart from your competition. iCreativeCanvas creates consumer-centric solutions that deliver results. The MFour Mobile Research website design needs to be clear, professional and intuitive for web site visitors in order to establish MFour Mobile Research as a leader in mobile research. iCreativeCanvas will be redesigning the MFour Mobile Research website to provide a modern, up-to-date user experience. The website will feature the following custom pages: homepage, general subpage layout, and three landing pages.

**Homepage:**
icreative Canvas will create hover states for the sections ; your survey, our panel, and new insight. The hover state will showcase text pertaining to each box. Also, links will be created to read more information.

**How it Works Page:**
-iCreative Canvas will create hover states for 3 boxes. (Same as home)
-In Target, each green box will be a clickable drop down to display more info.

**Use Cases:**
-In Case Studies, each green tab will be a hover over and case study will change when hovered.

**Support:**
-Menu bar on the left will be clickable and different section will appear with YouTube video (Image currently as placeholder).

## Number of Pages

iCreativeCanvas will be programming up to 10 (Give or take a few pages) total general pages. The number of pages will be based off the navigation site map submitted by MFour Mobile Research.

HTML 5 jQuery write less, do more.

## Interactivity with HTML5 / CSS3 / jQuery

Based on our meeting with MFour Mobile Research, iCreativeCanvas suggests including Javascript / HTML5 / CSS3 elements for the homepage, product page, and internal subpages. The JavaScript animations will help visitors to understand the products that MFour Mobile Research offers to its clients and will help to further promote the personality and image of the company. This includes an animated homepage slideshow, animated drop down navigation menu, and animated rollovers on all buttons.



Initial by iCreativeCanvas: ________
Initial by Client: ________

## Responsive Framework

iCreativeCanvas will be developing the MFour Mobile Research website on the bootstrap HTML5 framework which will allow the website to be properly viewed across all media devices. This includes a custom mobile device version that will be properly scaled to fit nearly all mobile devices including smart phones and tablets.

## Pricing Calculator

- The total cost is calculated by the number of respondents times the cost per interview.
- The cost per interview varies depending on which criteria they have selected (# of Questions, Who they are targeting, # of Screener Questions, # of Multimedia questions, and if GPS is enabled.
- Saving data on the server will not be required
- Mfour is required to give exact calculations before we build the pricing calculator

## Future Direction

MFour Mobile Research may wish to add features and/or other applications in the future. Though no other areas have been identified at this time, the design and functionality of the new web site developed by iCreativeCanvas will be scalable and adaptable to new areas of information.

## Client Revisions

All fully programmed websites are subject to 3 rounds of changes that alter less than 5% of the overall design of the website. This includes font sizes, image sizes, border sizes/colors, text formatting, etc.

## Hosting / Technical Requirements

iCreativeCanvas offers a variety of hosting packages to meet client's needs. Prior to website launch, iCreativeCanvas will suggest a hosting package based on the websites requirements.

If using a third party hosting account, the hosting requirements are listed below:

Platform: Linux

Database: MySQL

PHP Version: PHP5



Initial by iCreativeCanvas:
Initial by Client:

iCreativeCanvas

## Pricing Matrix

Please consider the following pricing matrix for the MFour Mobile Research web site project.

**Description of Service**

**Programming (CSS / HTML / PHP / JavaScript)**

- Homepage — INCLUDED
- General Subpage Layout — INCLUDED
- Landing Pages (4) — INCLUDED
- Pricing Calculator — INCLUDED
- Additional Features
    - Social Media Integration — INCLUDED
    - Content Stylization (up to 10 pages) — INCLUDED
    - Responsive Bootstrap Framework — INCLUDED
    - Animations (HTML5/CSS3/jQuery ) — INCLUDED
    - Blog — INCLUDED

**Project Total: $12,000.00**

## Getting Started

To proceed with this project, MFour Mobile Research is required take the following steps:

1. Accept the proposal as is or discuss desired changes.
2. Finalize and sign contract.
3. Submit initial deposit.

Once these steps have been completed, we will begin the project with a kick off meeting to introduce relevant personnel and begin preliminary project activities. The project is anticipated to take between 7-14 days. We will need feedback within 12 hours to stay on schedule. f



Initial by iCreativeCanvas: ________
Initial by Client: ________

iCreativeCanvas

## Payment Plan

50% Initial Website Deposit

25% Due Upon Design Approval

25% Due Upon Completion

The undersigned client agrees to the terms of this contract on behalf of his or her organization or business.

On behalf of the client:

Name: Kevin Norlander

Signature: [signature]

Date: 7/22/16

On behalf of the iCreativeCanvas LLC:

Blake Watcher
iCreativeCanvas LLC, President
2192 Martin Avenue, Suite 235
Irvine, CA 92612

Signature: ____________

Date: September 22, 2016



Initial by iCreativeCanvas: ____________
Initial by Client: [initials]

# Terms & Conditions

This Agreement is entered by and between iCreativeCanvas LLC and Client (**"Name specified in Section "Getting Started""**) (collectively the "Parties"). **Client** desires to engage iCreativeCanvas LLC for the following purpose: To design and implement a program to market Client's business on the Internet. (URL specified in Payment Authorization) on search engines lists. To carry out this purpose, the Parties hereby agree as follows:

**I. CLIENT'S OBLIGATIONS: A. Support to be performed by Client:** Omit

**II. CONSIDERATION:** A. The Parties hereby agree that the total consideration under this Agreement to be paid by Client to iCreativeCanvas LLC is fixed and earned as of the date of execution of this Agreement.

**B.** Failure of Client to pay any amount due within Ten (10) days of the due date shall result in the termination of this Agreement and render the remaining consideration immediately due and payable.

**III. CONFIDENTIALITY: A.** Confidential Information Defined: Each Party acknowledges that it will have access to certain confidential information of the other Party concerning the other Party's business, plans, customers, technology and products, including the terms and conditions of this Agreement ("Confidential Information"). Confidential Information includes, but is not limited to: descriptions, business plans, software, internet designs, test data, other data, reports, recommendations, marketing plans, advertising material, customer lists, business records, projections, products, product information, financial information, other plans or proposals, proprietary information and any other information disseminated by one Party to the other to further the purpose of this Agreement and the performance thereof.

**B.** Non-confidential Information. Information is not confidential if it is generally known or available to the public, it is known to one party before the other party discloses it, it was independently received by a Party from third party or it was developed independently of the other party.

**C.** Obligation of Nondisclosure. The Parties promise and hereby agree: 1. To hold Confidential Information in strict confidence; 2. To use Confidential Information only for purposes of carrying out this Agreement; 3. To only disclose the Confidential Information to those Party's officers, employees and agents as are necessary to carry out the purpose of this Agreement; and 4. Not to disclose Confidential Information to third parties without the other party's prior written approval.

The Parties hereby agree that these obligations shall remain in full force and effect during the term of the Agreement and for three years following termination of this Agreement.

**IV. WARRANTIES: A.** iCreativeCanvas LLC represents and warrants that it has the full power and authority to enter into this Agreement.

**B.** Client represents and warrants that it has the full power and authority to enter into this Agreement. Client further represents and warrants that it will only provide to iCreativeCanvas LLC copyrighted or trademarked material including trademarked brand names, trademarked logos and/or trademarked copyrighted phrases it has the legal authority to use. Client further represents and warrants that Client's services, products, materials, data, and information used by Client and by its customers and users in connection with this Agreement do not, as of the date of this Agreement, and will not during the term of this Agreement operate in any manner that would violate any applicable law or regulation.

**V. LIMITATION OF ICREATIVECANVAS LLC'S LIABILITY:**

IN NO EVENT SHALL ICREATIVECANVAS LLC BE LIABLE FOR ANY LOST REVENUE, LOST PROFITS, LOSS OF TECHNOLOGY, RIGHTS OR SERVICES, LOSS OF DATA, OR INTERRUPTION OF CLIENT'S BUSINESS, SPECIAL, INCIDENTAL, PUNITIVE, INDIRECT OR CONSEQUENTIAL DAMAGES, SUFFERED BY THE CLIENT, WHETHER OR NOT CLIENT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS, INJURY AND/OR DAMAGES. ICREATIVECANVAS LLC MAXIMUM AGGREGATE LIABILITY TO CLIENT RELATED TO OR IN CONNECTION WITH THIS AGREEMENT WILL BE LIMITED TO THE TOTAL AMOUNT PAID BY CLIENT TO ICREATIVECANVAS LLC HEREUNDER.

**VI. CLIENT'S INDEMNITY OBLIGATIONS: A.** Client shall indemnify iCreativeCanvas LLC against all claims, liabilities and costs, including reasonable attorneys' fees, and defend any third party claim or suit against iCreativeCanvas LLC arising out of Client acts. iCreativeCanvas LLC shall promptly notify Client in writing of such claim or suit and Client shall have the right to fully control the defense and any settlement of the claim or suit. iCreativeCanvas shall indemnify Client against all claims, liabilities and costs, including reasonable attorneys' fees, and defend any third party claim or suit against Client arising out of iCreativeCanvas acts. Client shall promptly notify iCreativeCanvas LLC in writing of such claim or suit and iCreativeCanvas LLC shall have the right to fully control the defense and any settlement of the claim or suit.

**VII. EXCUSED DELAYS IN PERFORMANCE:**

Neither party shall be liable for, any delay of performance, due to causes beyond its reasonable control. This includes but is not limited to: acts of God, delays associated with adjustments needed to comply with search engine algorithm or inclusion guidelines, the arrival of new competitor sites, or the significant modification of web pages by Client thus excluding these failures to perform from being considered a significant material breach of this contract. The time for completing the performance that has been delayed shall be extended by a period equal to the delay so caused.

**VIII. MODIFICATIONS:**

This Agreement may be amended at any time but any amendment must be in writing and signed by both Parties.



Initial by iCreativeCanvas:

Initial by Client:

iCreativeCanvas

**X. SEVERABILITY:**

If any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Agreement shall remain in full force and effect and shall in no way be affected or invalidated.

**X. GOVERNING LAW; DISPUTE RESOLUTION:**

This agreement shall be construed and enforced in accordance with the laws of the State of California without regard to the choice of law principles thereof. Venue shall be at the following: Orange County Court House Locations

**XI. GENERAL PROVISIONS: A.** Sole agreement: This is the entire Agreement between iCreativeCanvas LLC and Client.

**B.** Either party may change their address appearing in this Agreement by giving written notice of the change to the other party.

**C.** Independent Contractors: The Parties to this Agreement are independent contractors. Neither party is an agent, representative, or partner of the other party. Neither party shall have any right, power or authority to enter into any agreement for, or on behalf of the other party. This Agreement does not create any agency, association, partnership, joint venture, sales representation or employment relationship of any kind.

**E.** Omit

**F.** Additional Services : Any revisions, additions or redesign client wishes iCreativeCanvas LLC to perform not specified in this document shall be considered "additional" and will be billed separately for the particular service upon client approval.

**G.** Payment of Fees: In order for iCreativeCanvas LLC, Inc. to provide service, payments must be made promptly. Invoices are due upon receipt. Delinquent bills will be assessed a $50 charge if payment is not received within 20 days of the due date. If an amount remains delinquent 30 days after its due date, an additional $125 penalty will be added for each month of delinquency. iCreativeCanvas LLC reserves the right to remove all hosting and maintenance service that may be in progress if payment is overdue.

**H.** Laws Affecting Electronic Commerce: The client agrees that the client is solely responsible for complying with such laws, taxes, and tariffs, and will hold harmless, protect, and defend iCreativeCanvas LLC and its sub-contractors from any claim, suit, penalty, tax, or tariff arising from the client's use of Internet electronic commerce. Ecommerce is not the responsibility of iCreativeCanvas LLC.

**I.** Ownership: The materials created under the terms of this contract shall be the sole property of iCreativeCanvas LLC until payment is complete, at which point ownership will be transferred to the client. Upon final payment, the client will receive a full backup of all website files on a disc or an external device provided by client. If for any reason the terms of this contract are violated by the client, any and all materials created under this contract belong explicitly to iCreativeCanvas LLC.

**J.** iCreativeCanvas LLC shall not be held liable for: omissions, interruptions, deletion or loss of files or data, errors, defects, delays in operation, sales, or performance, whether or not limited to communication failure, theft, destruction or unauthorized access to iCreativeCanvas LLC's records, programs, of, orother places on the web which may or may not link to your site(s). Notwithstanding the above, client's exclusive remedies for all damages, losses and causes of actions whether in contract, tort including negligence or otherwise, shall not exceed the aggregate dollar amount which client paid during the term of this Agreement (minus any third parties fees for inclusions or links) and any reasonable attorney's fee and court dates.

**K.** Arbitration: Any disputes in excess of $7,000 (or the maximum limit for small claims court) arising out of this agreement shall be submitted to binding arbitration before the Joint Ethics Committee of a mutually agreed upon arbitrator pursuant to the rules of the American Arbitration Association. The arbitrator's award shall be final, and judgment may be entered in any court having jurisdiction thereof. The client shall pay all arbitration and court costs, reasonable attorney's fees and legal interest on any award or judgment in favor of iCreativeCanvas LLC.

**L.** Hourly Rate: Work performed outside of the "scope of work" as well as any additional services requested by the client shall be billed at $125.00 per hour which must be preapproved by the client.

**M.** Expenses: The client agrees to pay any additional expenses incurred by this project including stock photography and travel upon written (via e-mail or fax) approval by client.

**N.** Notices: All notices required or permitted to be given by one party to the other under this Agreement shall be sufficient if sent by either certified mail, return receipt requested, facsimile or hand delivery to the parties at the respective addresses set forth below or to such other address as the party to receive the notice has designated by notice to the other party:

**If to Client:** (Use details from Agreed & Accepted form) **If to iCreativeCanvas LLC:** iCreativeCanvas LLC - 2192 Martin, Suite 235, Irvine, CA, 92612 - Fax: 1-866-944-8529

**O.** Assignment: Client may not assign its rights or delegate its duties under this Agreement either in whole or in part without the prior written consent of iCreativeCanvas LLC, except that Client may assign this Agreement in whole as part of a corporate reorganization, consolidation, merger, or sale of substantially all of its assets. Any attempted assignment or delegation without such consent shall be void. iCreativeCanvas LLC may assign this Agreement in whole or part. This Agreement shall bind and inure to the benefit of each party's successors and permitted assigns.



Initial by iCreativeCanvas: ________

Initial by Client: ________

iCreativeCanvas

**P.** Design Approval: The client understands and agrees that, upon written consent(via e-mail or fax), a web site design cannot be altered following approval. Upon approval, only content (HTML Text & Photos) can be altered. Items that may not be altered after approval include navigation, background, or major design elements. Web site designs(homepage & content page layouts), Logo designs, and Print Collateral are limited to two rounds of revisions unless otherwise specified in the project overview.

**Q.** Onsite & Offsite Training: iCreativeCanvas offers onsite & offsite training at a base rate of $125.00 per hour. This includes content management system training, email troubleshooting & setup, as well as any other form of training.

**R.** Web site Content: iCreativeCanvas requires pre-approved web site content to be sent within a timely manner. If web site content is not delivered to iCreativeCanvas within two weeks prior to project commencement, the client agrees to pay milestone invoices(specified on page 5 "Initial Payment & Payment Plan") as they are due. iCreativeCanvas agrees to upload clients content within 10 days.

**S.** Final Artwork: The client agrees that final artwork (including but not limited to logos, color pallets, hexadecimal color codes, etc.) will be provided within 48 hours following project completion, final payment, and web site launch.

**T.** Web Design & Development Changes: All web design mockups are limited to two rounds of changes. Additional changes will be billed hourly upon client approval. All fully programmed web sites are limited to two rounds of changes. Additional changes will be billed hourly upon client approval.

**U.** Attorney's Fees: In any action or proceeding to enforce, preserve, or protect any right or benefit under this Agreement, iCreativeCanvas shall be entitled, in addition to any and all other relief granted by a court or arbitrator, to an award in such action or proceeding of the amount of its attorneys' fees reasonably incurred therein.

**XII. TERM, TERMINATION & REFUND POLICY: A.** Term: The term of this Agreement shall commence as of the later of the two dates set forth below and shall expire twelve (12) months after this Agreement is executed. Client has an option of leaving services before 90 days by providing a 30 days advance written notice via express, certified mail, facsimile transmittal, and email.

**B.** Termination for Cause: Either party will have the right to terminate this Agreement if the other party breaches any material term or condition of this Agreement and fails to cure such breach within 30 days after receipt of written notice of the same, except in the case of failure to pay fees, which must be cured within ten days of the due date.

**C.** Refund Policy: Without any exception, iCreativeCanvas LLC enforces a strict NO REFUND policy. No refunds will be given. All sales are final.



Initial by iCreativeCanvas: ________

Initial by Client: [signature]